## George Miland v. Richard A. Meiswinkel.

1. EVICTION—*As a Defense Must be Specially Pleaded.*—A defendant can not claim a constructive eviction when his plea sets up a forcible eviction.

2. CASUALTY—*Defined.*—A casualty is that which comes without design or without being foreseen.

3. SAME—*Existence of—When a Question of Fact—Sewers.*— The question as to whether a sewer was overtaxed by an extraordinary flood of water and was caused to back up and overflow into plaintiff's premises, and thus render them untenantable, is a casualty within the meaning of the covenants of a lease providing that in case the premises should be rendered untenantable by fire or other casualty, the lessor might, at his option, terminate the lease or repair the same within thirty days, and failing to do so, the term should cease and determine, is one of fact for the jury under proper instructions.

4. PRACTICE—*Examination of Witnesses by the Court.*—The examination of witnesses on the trial of a case is the province of counsel, and an orderly and intelligent examination by counsel should not be interfered with by the court without good reasons.

Assumpsit, for rent. Trial in the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the October term, 1898. Reversed and remanded. Opinion filed May 8, 1899.

**Statement of the Case.**—Appellee brought assumpsit to recover from appellant rent and interest due thereon, for January, February, March and April of 1896, for a flat, store and basement, 1479 Belmont avenue, Chicago,

demised to him by leases expiring April 30, 1896. The store and basement were used by appellant as a steam laundry and the flat as a dwelling, from about May 1, 1893, to a few days after October 1, 1895, and the rent paid to November 1, 1895.

The leases contained covenants to the effect that appellant had received the premises in good order and repair, and that he would keep the same, including catch basins and adjoining alleys, in a clean and healthy condition, at his own expense; that in case the premises should be rendered untenantable by fire or other casualty, the lessor might, at his option, terminate the lease or repair the same within thirty days, and failing so to do, the term should cease and determine.

Appellant pleaded the general issue, and special pleas setting up eviction by force of arms, etc., also that the premises were rendered untenantable by a casualty, to wit: The obstruction and stoppage of sewage and filth in a certain catch-basin and sewer pipes, describing how it was done, and that it caused the water, sewage and filth to overflow upon the premises, and averring that appellee did not repair the same within thirty days, whereby the terms of said leases ceased and determined, etc.; also that the premises were rendered untenantable by the same casualty, describing it, and that he was prevented from operating his machinery, and was compelled to cease his business, etc., and remove from the premises on account thereof; that he tendered to the plaintiff the keys to and the possession of the premises, which the plaintiff accepted and ever since has and still does retain such possession.

A replication of former adjudication was filed to all the special pleas, to which defendant rejoined, and also a replication taking issue on the pleas of eviction by force and arms, etc.

The only evidence offered by appellee was the leases, and appellant admitted he did not pay rent for the four months in controversy. Appellant then proceeded with the defense, he being the first witness. When appellant's counsel had

asked him two questions, his examination was taken from counsel by the court, without any apparent reason, and the remainder of his examination on the direct, covering eight pages of the record, with the exception of two pages, was conducted by the court. The principal part of the cross-examination of this witness, covering eighteen pages of the record, was also conducted by the court, also without any apparent reason therefor.

No objection by appellant's counsel seems to have been interposed to the action of the court in examining this witness, until the close of the cross-examination, when the witness was describing the effect on the premises of a certain flood, when the following occurred, viz.:

"The Court: How do you know it is the same flood? A. I didn't say that, your honor—

Q. Well, was it the same flood? A. No, sir.

Q. Well, you had a lot of floods about that time? A. Yes, sir; we had them all the time.

Q. All the time? A. All the time; yes, sir.

Q. Five years of flood—

Mr. Ward: I think I will note an exception to that.

The Court: Yes, strike it out.

Mr. Ward: Note an exception to that in the presence of the jury."

On re-direct examination, appellant's counsel asked the privilege of interrogating him with reference to the time when the flood come into his premises, as tending to explain a matter brought out on the cross-examination by the court, to the effect that it occurred after a scantling, which secured the iron top of the catch-basin, had been been knocked off. Counsel proposed to show that the flooding occurred before, but this was refused by the court. Counsel also asked the court to be allowed to question the witness with reference to certain matters which it was claimed by counsel had been omitted by the court in its examination of the witness. The court refused counsel's request, and also refused to allow counsel to state what were the omitted matters, and peremptorily dismissed the witness from the stand.

The same course, in substance, was pursued by the court with the two remaining witnesses called by appellant. It

was sought to prove by these witnesses, among other things, that the catch-basins and sewer pipes leading therefrom, which served to drain appellant's premises, but located on other premises occupied by other tenants of appellee, were constructed below the plane or level of the city sewer, with which these catch-basins and sewer pipes were connected, and that by reason of such defective construction, the sewage which had accumulated in those pipes and basins, when the sewer was overtaxed by an extraordinary flood of water, such. as occurred in August, 1895, was caused to back up and overflow into appellant's premises, thereby rendering the same untenantable, and compelling him to stop his laundry business, and to remove from the demised premises.    This evidence was excluded by the court, apparently upon the theory that, under appellant's lease, the trial judge was of opinion it was appellant's duty to repair or reconstruct the catch-basins and sewer pipes, because they received the sewage from his premises, although they were not on his premises nor under his control, and also because, in the court's opinion, a casualty was not proven.

Appellant's counsel preserved exceptions to the various rulings of the court in denying him the right to examine the witness, and also in excluding the evidence mentioned. The evidence that was admitted tends clearly to show that in the latter part of August, 1895, there came an extraordinary downfall of rain—something unprecedented—which caused the sewers and catch-basins on premises owned by appellee and occupied by other tenants of appellee, and near appellant's premises, to overflow and to back up the sewage, filth and slime therefrom into an areaway adjoining the demised premises, and thence through the door of the basement and into his premises, which compelled the stoppage of his laundry machinery, and the foul and noisome odors therefrom permeated appellant's entire premises; that appellant requested appellee, in substance, to remedy the construction of the catch-basins and sewer pipes, to see what could be done with them, which was refused, and appellant, after waiting the lapse of thirty days after such

request and about one week after October 1, 1895, removed
from the premises, paid rent therefor to November 1, 1895,
sent the keys to appellee, who took them and put a rent sign
in the window; also that when appellant told appellee the
next day after the flood that something would have to be
done or he would have to move out, appellee said, "All
right, you can move;" and appellant said, "All right, I will
look for another place then."

At the close of the evidence the court refused all appel-
lant's instructions, and instructed the jury to find for the
plaintiff and assess the damages at $262.02, which was done,
and the court rendered judgment for plaintiff for that
amount, from which this appeal is taken.

GEORGE HUNT and JAMES R. WARD, attorneys for appel-
lant.

The principle upon which a tenant is required to pay rent
is the beneficial enjoyment of the premises. An actual
physical expulsion by the landlord is not necessary to con-
stitute an eviction of a tenant. The law upholds, when cir-
cumstances warrant it, the defense of constructive eviction.
Dyett v. Pendleton, 8 Cow. (N. Y.) 731.

GREEN, HONORE & PETERS, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of
the court.

We are inclined to the opinion that the evidence as to a
surrender of the demised premises is too uncertain and
indefinite in its nature to constitute a defense. There is no
evidence as to a forcible eviction. Appellant can not claim
a constructive eviction, there being no pleading presenting
that defense. The only remaining defense to be considered
is as to whether there was shown such a casualty as, under
the terms of the leases, rendered the demised premises
untenantable, and therefore terminated the leases. Webster
defines casualty as "that which comes without design or
without being foreseen; contingency." He defines contin-

gency as "an event which may or may not occur; that which is possible or probable; a fortuitous event; a chance;" and also says that casualty is synonomous with accident; contingency; fortuity; misfortune.

As we have seen, the court excluded the evidence tending to show the defective construction of the catch-basins and sewer pipes which were located on premises owned by appellee and occupied by his other tenants, and over which appellant had no control, and which he was under no obligation to clean, repair or reconstruct, and also evidence which tended to show that because of such defective construction, sewage which accumulated in these basins and pipes, when the sewer was overtaxed by an extraordinary flood of water, was caused to back up and overflow into appellant's premises, and thus render them untenantable. Had this evidence been admitted—which we are of opinion should have been done—it, together with the evidence of the extraordinary flood of the latter part of August, 1895, and the conditions resulting therefrom, would have presented a question for the consideration of the jury, under proper instructions, as to whether there was such a casualty shown as rendered the demised premises untenantable, and consequently determined the leases.

The stoppage of the catch-basin by reason of faulty construction, and the coming of the flood which it is claimed caused it to overflow, was, within Webster's definition of casualty, an event which might or might not occur; which was possible or probable; which was a chance. Whether there was a casualty shown, and its effect, was for the jury, and the court erred in directing a verdict for appellee.

The action of the court in denying to counsel the right to examine appellant's witnesses to so great an extent as was done, was error, though not cause for reversal in this case, inasmuch as the case was taken from the jury. Had the case, however, been submitted to the jury, the court's action in this respect was calculated to prejudice the jury against appellant's defense. (Dunn v. People, 172 Ill. 595.) The examination of witnesses on the trial is the province of

counsel, and an orderly and intelligent examination by counsel should not be interfered with by the court without good reason therefor, which does not appear, from this record, to have been the case.

The judgment is reversed and the cause remanded.